IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COLBY LEE RAMOS (APLIN),** | No. 3:18-cv-00434-MO |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| MCJI, NORA MAINS, MICHAEL REEVES, MARK SWANSON, MCSO, MCDC, CAPTAIN ALEXANDER, CAPTAIN WHEELER, | |
| Defendants. | |

MOSMAN, J.,

Defendants MCJI, Nora Mains, Michael Reeves, Mark Swanson, MCSO, MCDC, Captain Alexander, and Captain Wheeler (collectively "Defendants") move for summary judgment in their favor. For the reasons discussed below, I GRANT Defendants' Motion [31] for Summary Judgment.

## BACKGROUND

During the pendency of this lawsuit, plaintiff notified the Court that she had changed her name from Colby Lee Aplin to Colby Lee Ramos ("Ramos"). [7]. Accordingly, I refer to her in this Order and Opinion as Ramos.

Ramos brings this pro se Amended Complaint against Defendants under 42 U.S.C. § 1983, alleging that Multnomah County Jail "Officers and Facility Officials' prisoner mail policies violates her constitutional rights." [6 at pp. 7-9]. Specifically, she claims the

1 – OPINION AND ORDER

restrictions on prisoner mail containing material encouraging or portraying sexual activity limited her ability to receive mail from her husband. [*Id.* at p. 6]. She asserts that Defendant Mains has rejected "90% of her mail," including mail from her husband and legal material from the trial division and the U.S. Courthouse. [*Id.* at pp. 6-7]. She claims that the sharing of photocopies of her confiscated mail in staff meetings constitutes an unreasonable search and seizure. [*Id.* at p. 7]. She also seeks "access to her true name on envelopes and inmate wrist identification band." [*Id.* at 12].

Defendants seek summary judgment on Ramos's claims. Ramos has filed a Response and two declarations in opposition to Defendants' Motion.

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute of material fact, viewing the evidence in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(a). A genuine dispute of a material fact is "one that could reasonably be resolved in favor of either party." *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence, that there remains a "genuine issue for trial." *Id.* at 324.

The non-moving party may not rely on the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The district court should "construe liberally motion papers and

pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."
*Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted). This rule exempts pro se inmates from strict compliance with the summary judgment rules, but it does not exempt them from all compliance. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). For instance, pro se inmates must still identify evidence supporting their claims. *Marrero v. Ives*, 682 F.3d 1190, 1192 (9th Cir. 2012) (even if the petitioner's filings were construed liberally, he still failed to identify evidence supporting his claim).

## DISCUSSION

Defendants argue they are entitled to summary judgment because Ramos failed to exhaust her available prison administrative remedies on all but one of her claims as required by the Prison Litigation Reform Act ("PLRA") and that her only exhausted claim fails as a matter of law. Defendants also argue that Ramos's claims under the Oregon Constitution fail as a matter of law and that she has failed to allege personal involvement in the violation of her Constitutional rights by Defendants Reese, Alexander, and Wheeler. In the alternative, Defendants argue qualified immunity shields them from Ramos's claim for money damages.

I. **No Private Right of Action under the Oregon Constitution**

Ramos asserts the mail policy violates her rights to free speech and to be free from unreasonable search and seizure under the Oregon Constitution. Defendants correctly assert that claims for damages may not be brought directly under the Oregon Constitution. *Hunter v. City of Eugene*, 787 Or. 298, 304, 787 P.2d 881 (1990) ("Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations."). Accordingly, Defendants are entitled to summary judgment on Ramos's claims under the Oregon Constitution.

## II. Failure to Exhaust Administrative Remedies

Defendants assert they are entitled to summary judgment on all but one of Ramos's claims because she failed to exhaust her available administrative remedies before filing this action. PLRA requires that prisoners exhaust all available prison administrative remedies before filing an action under any federal law. 42 U.S.C. § 1997e(c)(2); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (noting prisoners must exhaust administrative remedies before filing suit, not during the pendency of the action). Exhaustion requires appealing the grievance decision to the highest level within the grievance system. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003). Individuals who are prisoners at the time they file suit must comply with the PLRA's exhaustion requirements. *Talamantes v. Leyva*, 575 F.3d 1021, 1024 (9th Cir. 2009).

Multnomah County Sherriff's Office ("MCSO") has a grievance process to address inmate concerns. [32 at ¶ 5]. The grievance must be specific about the incident at issue, including the date, time, and names of the staff members involved. [*Id.*]. Prisoners can grieve one event per grievance and must file the grievance within five days of the incident. [*Id.*]. Defendants' evidence shows that Ramos filed only one grievance related to her mail: she complained that an item of mail she sent to another inmate was returned because it had a drawing and writing on the outside of the envelope ("Picture inside Do Not Bend"). [32, Ex. 4].

In her Response, Ramos includes MCSO Service Request Forms that she submitted regarding issues related to her mail. [*See, e.g.,* 40 at pp. 41-44 and 49]. The PLRA, however, "requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules . .

. as a precondition to bringing suit in federal court[.]" *Id.* Submission of a Service Request Form does not grieve an incident as required by MCSO's procedural rules. [32 at ¶ 5].

Ramos's Response also includes a MCSO Grievance Form dated June 1, 2018, which grieves failure to receive court mail sent to her married name (Colby Lee Ramos). [40 at p. 56]. [*Id.*]. Ramos asserts she found the grievance in the trash after giving it to a MCSO deputy to process. [*Id.*]. The PLRA, however, requires that prisoners exhaust administrative remedies before filing suit, not during the action. *McKinney v. Carey*, 311 F.3d at 1199. Ramos was a prisoner when she brought this action; she opened this case in March 2018 and filed her Amended Complaint on May 31, 2018. [1 and 6]. Accordingly, the June 2018 grievance does not show that administrative remedies were unavailable to her due to the MCSO deputy's failure to properly process the grievance or that she exhausted her administrative remedies regarding her claim that she did not receive mail addressed to her married name.

Even construing Ramos's filings liberally and viewing the facts in a light most favorable to her, Ramos has failed to identify evidence supporting her claim that she exhausted her administrative remedies for most of her claims regarding MCSO's mail policy. *Marrero*, 682 F.3d at 1192. I find the evidence shows that Ramos did not exhaust her available prison administrative remedies on her claims for: (1) rejection of mail from her husband; (2) rejection of mail because it was not addressed to her true name; (3) interference with her legal mail from the trial division or the U.S. Courthouse; or (4) improper restrictions of mail containing glitter, photographs, or other foreign substances. Accordingly, Defendants are entitled to summary judgment on these claims.

///

///

### III. Policy Restricting Writing on Envelopes Does not Violate the First Amendment

Defendants argue Ramos's claim that the MCSO policy restricting the writing on the outside of envelopes violated her constitutional rights fails as a matter of law because this policy is related to legitimate penological interests. Specifically, Defendants assert the policy restricting writing on the outside of envelopes furthers administrative efficiency and increases facility security.

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). District courts should analyze prison regulations regarding mail under four *Turner* factors: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Crime Justice & Am., Inc. v. Honea*, 876 F.3d 966, 972 (9th Cir. 2017). The first of these factors is the most important. *Prison Legal News v. Cook*, 238 F.3d 1145, 1151 (9th Cir. 2001).

Defendants have articulated a legitimate penological interest for this regulation. It is undisputed that MCSO has a legitimate interest in delivering high volumes of mail quickly and efficiently that would be frustrated by mailroom staff having to spend time reviewing external content or struggling to make out obscured addresses. In addition, MCSO has a security interest in restricting writing or drawing on the outside of envelopes because outside markings on envelopes might result in communications between co-defendants, violations of protective or no contact order, or allow communication between prisoners otherwise not allowed to

communicate. Courts have recognized that efficiency and security are legitimate penological objectives. *Prison Legal News v. Columbia Cnty.*, 942 F.Supp.2d 1068, 1082 (D.Or.2013) (quoting *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 861 (5th Cir.2004) ("staff and space limitations, as well as financial burdens, are valid penological interests")); *Simpson v. Cty. of Cape Girardeau*, 879 F.3d 273, 279 (8th Cir. 2018) (upholding a ban on all mail except postcards on the basis that "[i]nstitutional efficiency is also a legitimate penological objective").

A liberal construction of Ramos's Amended Complaint shows she has at most alleged a lack of a rational relationship between a legitimate penological interest and the MCSO's mail policy. She has not, however, presented any evidence of a lack of a rational relationship. When a prisoner does not refute the rational connection between the prison regulation and the prison's asserted interest in the regulation, the first, and most important, *Turner* factor is satisfied. *Cook*, 238 F.3d at 1150).

The second *Turner* prong requires me to consider whether alternative avenues of exercising the same right—in this case sending an envelope with a drawing and writing on the outside—remain open to the prisoner. *Turner*, 482 U.S. at 90. To the extent that Ramos wanted to send the drawing on the outside of the envelope to her friend, she could have put the rejected envelope inside a new, blank envelope. Although it's true that MCSO's policy would not have allowed Ramos to write "picture inside do not bend" on the outside of any new cover envelope, writing this phrase on the outside of an envelope is not protected by the First Amendment. *See, e.g., McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005) (holding a prisoner's speech "must relate to a public concern and not just a personal matter to receive First Amendment protection"). This factor weighs in favor of a finding that MCSO's mail policy is constitutional.

Under the third *Turner* factor, I must consider impact the requested accommodation will have on prisoners, prison staff, and prison resources generally. *Turner*, 482 U.S. at 90. It is undisputed that allowing outside content on envelopes would slow down mail processing and threaten jail security by potentially allowing inmates to improperly communicate with each other. A lack of efficiency would burden prison resources by taking mailroom staff away from other tasks to spend time reviewing outside content on envelopes. Finally, although Defendants do not discuss the possible impacts on prisoners, I find that allowing outside content at the discretion of mailroom staff could adversely impact prisoners by creating inconsistent applications of the policy, creating the risk of discrimination or content-based determinations. I find the third *Turner* factor weighs in favor of the MCSO mail policy passing constitutional muster.

Finally, I find the evidence does not show "the existence of easy or obvious alternatives indicat[ing] that the regulation is an exaggerated response by prison officials." *Cook*, 238 F.3d at 1149 (citing *Turner*, 482 U.S. at 89-90). Accordingly, I find the mail policy does not violate the First Amendment and grant summary judgment in Defendants' favor on this claim.

### IV. Policy Restricting Writing on Envelopes Does not Violate the Fourth Amendment

Ramos alleges the mail procedures violate her right to be free from unreasonable search and seizure because "returned confiscated mail gets photocopied and can be shared in staff meetings." [6 at p. 7]. Prisoners have only a limited expectation of privacy in jail. *Hudson v. Palmer*, 486 U.S. 517, 536 (1984). "[A] prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are reasonably related to legitimate penological interests...." *Witherow*, 52 F.3d at 265. As discussed above, the MCSO's mail policy is

reasonably related to legitimate penological interests. Defendants are entitled to summary judgment on the basis that the mail policy did not violate Ramos's Fourth Amendment rights.

### V. Policy Restricting Writing on Envelopes Does not Violate Ramos's Right to Equal Protection under the Fourteenth Amendment

Ramos alleges MCSO's restrictions on sending mail with content on the outside of the envelope violates the Fourteenth Amendment's equal protection clause. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted) (rejecting equal protection claim where inmate failed to show that he was treated differently than any other inmates in the relevant class). Ramos offers no evidence that jail officers and officials treated her differently than other prisoners regarding the mail policy. Accordingly, her Fourteenth Amendment claim fails as a matter of law.

### VI. No Personal Involvement by Reese, Alexander, and Wheeler

Defendants argue they are entitled to summary judgment on Ramos's claims against Defendants Reese, Alexander, and Wheeler because her Amended Complaint does not allege personal involvement in or a causal connection to the violation of her constitutional rights by these three defendants. "Liability under [section]1983 arises only upon a showing of personal participation by defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Ramos's Amended Complaint alleges that these three defendants approved the mail policy in 2018, but she does not allege that they were personally involved in reviewing, confiscating, photocopying, or reviewing her mail. Even liberally construing her Amended Complaint, Ramos does not allege a showing that these three defendants had a personal

involvement in the alleged constitutional deprivation or that their conduct in approving the mail policy caused the constitutional deprivations of which she complains. Accordingly, these three defendants are also entitled to summary judgment on the basis that Ramos failed to allege their involvement in the violation of her rights.

## CONCLUSION

I GRANT State Defendants' Motion [31] for Summary Judgment. I dismiss Ramos's First, Fourth, and Fourteenth Amendment claims related to MSCO's mail policy restricting content on the outside of prisoner mail, her claims against Wheeler, Alexander, and Reese, and her claims under Oregon's Constitution with prejudice. I dismiss her remaining claims without prejudice.

In light of my decision granting Defendants' Motion, I DENY Ramos's January 19, 2019, Motion [45] for Clarification as moot.

IT IS SO ORDERED.

DATED this 13 day of February 2019.

MICHAEL W. MOSMAN
Chief United States District Judge